**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Michael Mapes,

Plaintiff,

v.

**MEMORANDUM OPINION**
**AND ORDER**
Civil File No. 00-667 (MJD/JGL)

MTR Gaming Group, Inc., f/k/a
Excalibur Holding Corporation, f/k/a
Winners Entertainments, f/k/a
Golden Palace Casinos, Inc.,

Defendant.

---

This matter is before the Court on Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or in the alternative, for summary judgment, and Plaintiff's motion for summary judgment. In the underlying matter, Plaintiff sued Defendant, seeking to enforce the terms of a prior Settlement Agreement. After reviewing the documents and pleadings, the Court determines that the terms of the Settlement Agreement mandate an award of summary judgment for Plaintiff.

## Background

Plaintiff Mapes was a founder and substantial shareholder in Golden Palace Casino, Inc., an Indian gaming management company with over $5 million in cash assets. In 1992, Defendant MTR, acquired Golden Palace's assets via a Stock



FILED JUN 1 1 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Exchange offer.[1] In 1994, Mapes and the other founders sued MTR in an effort to enforce the Stock Exchange Agreement. The parties settled on June 30, 1995, and signed the "Settlement Agreement" which is the basis for the instant claim.

The Settlement Agreement provided that Mapes would receive 120,000 shares of Winner's common stock, in consideration for terminating all litigation. These shares, called "Make-up Shares," bore restrictive legends stating that the shares were unregistered and could be repurchased by MTR at $1.50 per share. The Settlement Agreement required MTR to use its best efforts to register the shares by June 30, 1996. In the event that registration did not occur, MTR was required to execute a Promissory Note to Plaintiff, in the amount of $180,000. The Agreement also contained the following provision:

> 4(c): Exempt Transactions In the event Mapes sells any of the Make-Up Shares prior to the effective date of the registration statement in a transaction exempt from the Act's registration requirements, then [MTR] shall receive a credit against the Note (if such Note is required to be executed and delivered pursuant to Section 6 below) in an amount equal to the actual purchase price of such shares, up to $1.50 per share multiplied by the number of shares sold.

Section 6 of the Settlement Agreement says:

> Execution of Promissory Note: If the Registration Statement does not become effective by June 30, 1996, for whatever reason, then Winners shall execute and deliver to Mapes a promissory note in the form attached hereto as Exhibit A (the "Note").

During the time when the parties were negotiating the Settlement Agreement, MTR's

---

[1] The transaction was handled by MTR's predecessor in interest, Excalibur Holding Corporation a/k/a Winners Entertainment. The signatory to the Stock Exchange Agreement is Winners Entertainment, Inc. The parties are herein collectively referred to as "MTR".

counsel, Robert Ruben, identified a potential buyer, Mr. Louis Haskell, for the Make-Up Shares which Mapes was due to receive. See LeNeave Aff., Ex. 3, 4 and 6. Four months after signing the Settlement Agreement, Plaintiff sold his Make-Up Shares to Haskell, who purchased the entire lot for $48,000 (¢.04/per share), on March 8, 1996.

MTR did not register the shares (which were now owned by Haskell) by June 30, 1996, and did not execute any Promissory Note. Mapes filed this lawsuit, alleging that MTR violated the terms of the Settlement Agreement. Mapes is asking for $138,000 ($180,000 minus the $48,000 sales price of the shares), as well as 12% annual interest, attorneys fees and costs. His total damages from July 1, 1996 to April 6, 2001, are $253,890.76. The Settlement Agreement provides that the prevailing party is entitled to an award of costs and attorneys' fees.

**Analysis**

A settlement agreement is a contract. All rules of contract interpretation and enforcement apply to settlement agreements. See St. Paul Fire & Marine Ins. Co. v. Nat'l Chiropractic Mutual Ins. Co., 496 N.W.2d 411, 415 (Minn. App. 1993). The objective of judicial construction of contracts is to allow the intent of the parties to prevail. See Buchwald v. Univ. of Minnesota, 573 N.w.2d 723, 726 (Minn. App. 1998). In doing so, unambiguous contract language must be given its plain and ordinary meaning. Id. Terms of the contract must be read in context of the entire contract, so as to give meaning to all of its provisions. See Current Technology Concepts, Inc. v. Irie Enterprises, Inc., 530 N.W.2d 539, 543 (Minn. 1995).

MTR argues that Mapes' sale of the stock extinguished his right to demand

execution of the Promissory Note. This argument is not supported by any language in the contract. On the contrary, Mapes' right to sell stock prior to the proposed registration date was specifically contemplated in the contract. See Section 4(c), Settlement Agreement. The right to demand execution of the Promissory Note was triggered by Defendant's failure to obtain registration by June 30, 1996, "for whatever reason." Section 6, Settlement Agreement. There is no language in the contract requiring Mapes to be the owner of the stock on that date. The Settlement Agreement would grant MTR a credit against the Note "[i]n the event Mapes sells any of the Make-Up Shares *prior to* the effective date of the registration statement...." Section 4(c), emphasis added.

At the time the Settlement Agreement was negotiated and signed, MTR knew that Mapes was considering the sale of the Make-Up Shares, and in fact even helped arrange the sale. See Ruben Aff., ¶4. If MTR had intended for Plaintiff's rights to be extinguished upon sale of the Make-Up Shares, it could have negotiated that term, as it did with the others.

MTR argues that Sections 4(c) and 6 must be read together, in order to demonstrate that any sale of stock prior to June 30, 1996 would extinguish Mapes' right to demand the Promissory Note. The Court finds it difficult to understand how this argument helps MTR. According to Section 4(c) of the Settlement Agreement, Plaintiff retained the ability to sell some or all of his shares prior to the effective date of registration. If he did so, MTR would be credited against the note, but only if, argues MTR, "such note is required to be executed and delivered pursuant to Section 6 below." Section 6 provides for execution and delivery of the Promissory Note if registration does not become effective by June 30, 1996.

Once June 30, 1996 passed without the shares being registered, then Section 6 became operative. Section 6 contains no restrictions on Mapes regarding the Promissory Note–it simply requires MTR to execute and deliver the Promissory Note in the event that the Registration Statement does not become effective on June 30, 1996. Once the Note was required to be executed and delivered, then MTR could claim a credit for any sale of shares prior to June 30. MTR's only valid argument is that it should be entitled to deduct the amount paid by Haskell from the $180,000. That is precisely what Mapes is requesting.

MTR argues that Plaintiff's interpretation of the Agreement would destroy the intent of the parties, which was to "let the market do its job" for one year, and hope that the price of the stock went up. MTR asserts that Plaintiff's construction of the Agreement would produce absurd results, because, MTR claims, Section 4(c) provides a floor for Plaintiff's benefit only if Plaintiff sells unregistered shares *after* June 30, 1996. Again, this argument is unavailing. Section 4(c) protects MTR, not Mapes; in the event that Mapes sold any shares prior to June 30, 1996, MTR would receive a credit against the Promissory Note. Enforcing this provision, as Mapes is requesting, will not thwart the intent of the parties as described in the Settlement Agreement.

MTR also argues that the parties intended that MTR would have the right to reduce the amount owed on the Promissory Note by repurchasing the Make-Up shares from Mapes. See Section 10, Settlement Agreement. Once Mapes had sold the shares, MTR could no longer repurchase them from him, and so could not reduce its burden. Therefore, MTR argues, the Agreement should be construed to extinguish the Note.

The Court does not agree. While Section 10 does permit MTR to repurchase the

Make-Up Shares, it also permits Mapes to extinguish Winners' right of repurchase. The parties had clearly contemplated a situation in which Winners' right of repurchase was extinguished but MTR would still receive a credit against the Promissory Note. The situation is the same here–Winners could no longer repurchase the stock (because it was now owned by a third party), but it can receive a credit against the Promissory Note, and the remaining amount is still due to Mapes.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's motion to dismiss is DENIED.
2. Plaintiff's motion for summary judgment is GRANTED.

Let judgment be entered.

Dated: 6 - 11, 2001.

Michael J. Davis
Michael J. Davis
United States District Court Judge

Mapes v. MTR Gaming Group, Inc.
Civil File No. 00-667

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.